UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In the matter:

    Nicholas D. Lettie and      Case No. 18-24510-beh
    Angela M. Renier-Lettie,

                  Debtors.      Chapter 13

**DECISION DENYING DEBTORS' MOTION
TO CONTINUE THE AUTOMATIC STAY**

The debtors filed this case on May 7, 2018. Because they had a prior Chapter 13 bankruptcy case pending and dismissed within the preceding year, the debtors filed a Motion to Continue the Automatic Stay. See 11 U.S.C. § 362(c)(3). Mr. Lettie's supporting Affidavit of Changed Circumstances asserted that Mrs. Renier-Lettie's decreased income due to a job loss caused their earlier case to be dismissed. The Affidavit states that Mr. Lettie is now fully employed with higher hourly pay and overtime such that his income has increased 15% since dismissal of the earlier case.[1] CM-ECF Doc. Nos. 7 and 8. Their Chapter 13 plan, filed on May 7, 2018, proposes to pay $1,469 per month, an amount which includes their mortgage payment. CM-ECF Doc. No. 2.

On May 21, 2018, creditor Bank of Luxemburg ("BOL") objected to the debtors' motion to continue the stay, asserting, among other things that the debtors' income-to-payment ratio remains the same as that which the debtors were previously unable to meet, the debtors made no payments on their mortgage since dismissal of the previous case, leading to foreclosure and

---

[1] The debtors filed their previous Chapter 13 bankruptcy petition (16-27058) on July 13, 2016 and their plan was confirmed a year later. Their plan proposed to pay $1,262 in monthly plan payments, which included payment to their mortgage lender, Bank of Luxemburg ("BOL"). The debtors' prior case was dismissed on September 19, 2017 for failure to make plan payments.

unconfirmed sheriff's sale, the total proposed plan payments are $3,266 less than the amount needed to fund the plan, and the debtors' present bankruptcy is not a good faith filing.  CM-ECF Doc. No. 18.[2]

The Court held a preliminary hearing on the debtors' motion to continue the stay on June 5, 2018.  At the hearing, Mrs. Renier-Lettie testified that her husband, who does seasonal concrete work, couldn't earn enough money to support plan payments in their last case.  She testified that her husband's income now would be higher than it was during the previous case, in part because Mr. Lettie's employer "is now aware of their circumstances" and will give Mr. Lettie the opportunity to do vehicle maintenance and snow removal work through the winter this year.  She also testified that her husband's pay rate had increased, and that he was working more than 50 hours/week.  She testified he could work 60-65 hours/week if he chose.  Mrs. Renier-Lettie further testified that she last worked in December, 2017, and that she can return to work after she delivers their third child in early September, either at her prior part-time position or with a different, unnamed employer who has offered her full-time work.  Her parents, who live with them, provide childcare for the family.

Near the close of her testimony, Mrs. Renier-Lettie disclosed that there had been a fire on their property the night before, rendering their home at least temporarily uninhabitable.  While she knew the fire had damaged several rooms, Mrs. Renier-Lettie could not state the full extent of the damage or when the family might be able to live in it again.  In light of the testimony, and as the fire occurred the night before the hearing, the Court conditionally extended the stay and set a second hearing on the debtors' motion six weeks out, giving the parties time to gather information about the status of the fire-stricken

---

[2] The debtors propose plan payments of $339 per week for 60 months for a total estimated payment to the Chapter 13 trustee of $88,140.  This amount includes pro-rata monthly payments to BOL for a total estimated payment of $79,340.17 to BOL.  CM-ECF Doc. No. 2.  According to Mrs. Renier-Lettie, the debtors have been making their plan payments, with the payments coming from Mr. Lettie's paychecks.

property and allow the debtors to amend their proposed chapter 13 plan to accommodate any changes necessitated by the fire.

On July 9, 2018, the debtors filed virtually identical affidavits. CM-ECF Doc. No. 23. The affidavits repeated some information about Mr. Lettie's employment status and prospects, noted their family's temporary living situation, and averred that "[p]rovided [BOL] maintained insurance against our home, my intention is to continue to fund the chapter 13 plan until the [bank's] mortgage is paid off by insurance proceeds ... I believe I would have enough funds to sufficiently repair my residence once the secured debt with [BOL] is paid off by the insurance proceeds." On Friday, July 20, 2018, a few hours before the continued hearing, Mrs. Renier-Lettie filed an amended affidavit, correcting only a minor error. CM-ECF Doc. No. 26. The debtors have not filed an amended plan.

At the July 20, 2018 continued hearing, Mrs. Renier-Lettie testified that when she filed her affidavit, she hoped that BOL may have insurance on the property but that was unsure. It is now her understanding that the bank did not have insurance on the property. She testified she learned "this week, maybe on Wednesday or Thursday," that there may not be insurance. She acknowledged that the debtors have not paid for property insurance since late 2017. The home is uninhabitable, and the restoration cost is unknown. Since the fire, the debtors and their family, which includes Mrs. Renier-Lettie's parents, have lived in a pole building on the property, using a neighbor's shower facilities.[3] Mrs. Renier-Lettie stated that the debtors intend to pay the BOL mortgage through their plan.

Mrs. Renier-Lettie also testified that her baby is due September 2, and four to six weeks after the birth she intends to start working part-time for her husband's employer, Stahl Concrete, doing concrete work. On cross-

---

[3] BOL offered testimony from the Town of Brussels' clerk and zoning administrator that the debtors' current living situation in the pole building violates town ordinances. The Court declines to consider such evidence for purposes of its determination under 11 U.S.C. section 362(c)(3). That section requires the Court to decide whether the debtors have overcome the presumption of bad faith at the time they filed this case.

examination she acknowledged that even though their budget includes $90/month for real estate taxes and $125/month for insurance on the property, the debtors have not been paying for insurance, and she did not know if they were delinquent on real estate taxes. She also stated that due to the fire damage, the debtors will be on their own to remove the old house from the property. They are looking for a new insurer to provide property insurance, and she hopes to bring the real estate taxes current within a month.

Jessie Stahl, owner of Stahl Concrete, testified and confirmed that he will employ Mrs. Renier-Lettie on a seasonal basis to help with cleaning and picking up supplies, that he expects to provide her fewer than 30 hours per week, and that he has not yet worked out an hourly pay rate for her. Mr. Stahl also testified that he will give Mr. Lettie some winter hours if Stahl needs inside help during the winter, but because his winter needs fluctuate every year he has not guaranteed Mr. Lettie winter employment.

Mrs. Renier-Lettie's father, Ivan Renier, then testified. Mr. Renier stated that even though he and his wife are on a fixed income of social security, they are considering obtaining a 30- to 35-year loan to enable the debtors to erect a prefab home on the property, replacing the house that burned. Although Mr. Renier has started talking to lenders and estimates that he would need to borrow between $60,000 and $65,000, he has not identified a lender willing to make the loan. Mrs. Renier-Lettie agreed that they would have to finance the new house before paying off the BOL mortgage.

Jeff Molloy, Senior Vice President of Credit for BOL, testified for the creditor. Molloy testified, without contradiction, that in the past, Mr. and Mrs. Renier had repeatedly refused to help the debtors with their BOL mortgage payments. Mr. Molloy also testified that BOL has worked extensively with the debtors to try to lower their monthly payments, including splitting payments into weekly installments, yet the debtors have made no mortgage payments since some time in 2016; moreover, the lack of mortgage payments meant that the bank had no escrow funds to pay toward insurance coverage for the Lettie property. When the insurance was cancelled due to nonpayment in November

2017, the bank was placed at risk. Mr. Molloy testified that the debtors' real estate taxes are not current.

## ANALYSIS

When a debtor has had one prior case dismissed within the last year, the automatic stay of 11 U.S.C. section 362(a) expires thirty days after the debtor files the new case. 11 U.S.C. § 362(c)(3)(A). However,

> on the motion of a party in interest for continuation of the automatic stay and upon notice and a hearing, the court may extend the stay in particular cases as to any or all creditors (subject to such conditions or limitations as the court may then impose) after notice and a hearing completed before the expiration of the 30-day period only if the party in interest demonstrates that the filing of the later case is in good faith as to the creditors to be stayed . . . .

11 U.S.C. § 362(c)(3)(B).

A rebuttable presumption that a debtor's current case was not filed in good faith arises in certain circumstances. 11 U.S.C. § 362(c)(3)(C). The presumption applies as to all creditors if a previous case was dismissed after the debtor failed to perform the terms of a confirmed plan, or if there has not been a substantial change in the financial or personal affairs of the debtor since dismissal of the previous case. 11 U.S.C. § 362(c)(3)(C)(i)(II), (III). Because the Letties' first case was dismissed for failure to make payments under their confirmed plan, the presumption arises here.

It is the debtor's burden to overcome the presumption by clear and convincing evidence. 11 U.S.C. § 362(c)(3)(C); *In re Gibas*, 543 B.R. 570, 595-596 (Bankr. E.D. Wis. 2016). "Evidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question, [in contrast,] proof by a preponderance of the evidence means that the trier of fact must believe that it is more likely than not that the evidence establishes the proposition in question." *Id., citing In re Meyers*, 616 F.3d 626, 631 (7th Cir. 2010) (internal citations and quotation marks omitted).

The Bankruptcy Code does not define "good faith" but the Seventh Circuit has directed courts to engage in a "totality of the circumstances" analysis to determine if a Chapter 13 case was filed in good faith, and to consider factors including: the timing of the petition, how the debt arose, the

debtor's motive in filing the petition, and how the debtor's actions affected creditors. *In re Gibas*, 543 B.R. at 596, citing *Matter of Love*, 957 F.2d 1350 (7th Cir. 1992). Other bankruptcy courts have adopted and supplemented the *Love* factors in analyzing good faith under section 362(c)(3), considering why the debtor's prior case was dismissed (including the debtor's conduct in that case), the likelihood that the debtor will have a steady income throughout the bankruptcy case and whether he can properly fund a plan, whether the debtor's circumstances have changed since the prior dismissal, and, whether the trustee or creditors have objected to the debtor's motion. *Id.* (citations omitted).

In the current case, the debtors describe some sympathetic and even traumatic circumstances, including that Mrs. Renier-Lettie's family has lived on the property for thirty-three years, Mr. Lettie has not found work that fully employs him throughout the year, the debtors are expecting a third child and would like to continue to raise their family on the property, and a recent fire has rendered the house itself uninhabitable, and apparently unrestorable.

But sympathy cannot transform speculation into a likelihood that this second case will result in a bankruptcy discharge. Here, the debtors' testimony that they will have steady income throughout the next five years such that they can properly fund a plan and that they have substantially changed circumstances since the prior dismissal, is hopeful but largely speculative. The objection of their primary creditor, BOL, mirrors this assessment.

For example, the debtors' income projections are comprised of conflicting testimony as to whether Mr. Lettie will have employment income in the winter months,[4] uncertain testimony as to when and how much Mrs. Renier-Lettie

---

[4] Mrs. Renier-Lettie's testimony at the preliminary hearing that her husband will have winter work hours going forward because his employer "is now aware of their circumstances" seems to shift the burden of Mr. Lettie's failure to secure wages and make mortgage payments over the last two winters onto his employer. But the good faith inquiry looks at a *debtor's* "intent or willingness to complete" a plan, not the intent of his employer. *See In re Gibas*, 534 B.R.570, 597 (Bankr. E.D. Wis. 2016).

will be paid for future part-time work, and little more than aspiration that Mrs. Renier-Lettie's parents will be able to obtain a loan to finance a new house for the family. Significantly, the debtors' affidavit assumptions about insurance proceeds compensating BOL are not accurate. The testimony was that neither the bank nor the debtors purchased property insurance on the homestead in the months before the fire.[5] That knowledge, or at least reasonable suspicion that there was no property damage insurance in place to compensate the bank, is likely why the debtors have not yet filed an amended plan. But as stated in their affidavits, their plan would depend on insurance proceeds to pay BOL. Mrs. Renier-Lettie's later testimony to the contrary - that their projected income would be sufficient to pay BOL - is not clear and convincing, particularly because their projected income in this case is only slightly higher than their projected income in the last case, which proved to be insufficient to maintain plan payments. Without insurance proceeds to relieve the BOL debt, uncertain financing for a new house, and the existing house rendered uninhabitable, the debtors' monthly housing expense is unknown. This unknown severely hampers any feasibility assessment.

      The debtors filed their second Chapter 13 case at the eleventh hour - to avoid confirmation of the sheriff's sale. A devastating fire a month after the case was filed necessitates additional funds to house the debtors. Without clear and convincing evidence that the debtors have adequate, increased financial resources to complete their plan, the Court cannot find that the debtors filed this case in good faith, as the law understands that concept.

---

[5] The Court finds unpersuasive the debtors' argument at the continued hearing that BOL assumed the risk when it failed to purchase force-placed insurance on the property. To assign good faith to the debtors because the bank did not purchase property damage insurance would effectively shift the burden of proof. The Court declines to impose such a burden on the lender.

For the foregoing reasons, the Court DENIES the debtors' motion to continue the stay.   Counsel for Bank of Luxemburg should prepare an order.

Dated: July 30, 2018

By the Court:

Beth E. Hanan
United States Bankruptcy Judge